### No. 221

No. 19504—Wilbur R. Solt and R. P. Meyers, Receiver, v. Public Utilities Commission of Ohio, et al. Error to the Public Utilities Commission of Ohio.

973. PUBLIC UTILITIES COMMISSION—
1. Authorized to regulate service and to prescribe safety regulations for operation of motor vehicles.
2. Revocation of certificate of public convenience and necessity warranted when omission of trips from schedule by motor transpor-
(Continued on Page 182)

## Weekly Abstract of PENDING CASES

### No. 222
### FIRST NAT'L BANK v. TOLEDO COOKER CO.
No. 19607. Supreme Court

On motion to certify. Dock. Jan. 28, 1926; 4 Abs. 88.

147. BILLS & NOTES—Is a bank a holder in due course where it discounts a note before maturity, and the proceeds of such discount are credited to the deposit account of the payee, but are not checked out by the payee until after maturity of the note, but before the bank receives notice or knowledge of defects in the title to the instrument.

Note—OA. opinion will be found in 4 Abs. 66.

---

## No. 223

### MILANO, Admr. v. PEOPLE'S RY. CO.

No. 19571. Supreme Court

On motion to certify. Dock. Jan. 16, 1926; 4 Abs. 56.

**829. NEGLIGENCE**—Where there is a scintilla of evidence which tends to bring a case within the doctrine of the last clear chance, is it the province of the court to determine the weight of the evidence and is it necessary to allege willfulness, wantonness and malice to invoke this doctrine?

Attorneys—Marshall & Harlan, for Milano; McMahon, Corwin, Landis & Markham, for Railway Co.; all of Dayton.

---

## No. 224

### COMMONWEALTH CAS. CO. v. SPOHN

No. 19596. Supreme Court

On motion to certify. Dock. Jan. 23, 1926; 4 Abs. 88.

**647. INSURANCE**—Is a farmer "wholly and continuously disabled and prevented from performing any and every duty pertaining to his business or occupation," as provided by an accident policy, if during the period of alleged disability he is able to direct the running of his farm and partially perform his duties as a county commissioner?

W. M. Spohn brought this action originally in the Richland Common Pleas against Commonwealth Casualty Company of Pennsylvania, to recover on a policy issued to him by said company insuring him against accident.

The section of the contract in question reads as follows:

"For the period of total loss of time commencing on ate of accident, during which such injury alone shall wholly and continuously disable and prevent the insured from performing any and every duty pertaining to any business or occupation, the company will pay accident indemnity."

It appears that Spohn was a farmer and a county commissioner and that pursuant to the issuance of the insurance contract he was injured. During the period for which he claims total disability he supervised the management of his farm and performed some of his duties as county commissioner.

The judgment of the Common Pleas in holding that Spohn was totally disabled under the contract was affirmed by the Court of Appeals.

The Company, in the Supreme Court, contends that the contract provided for the performance of "any and every duty pertaining to any business or occupation" and that by performing the above duties he cannot recover for total disability.

Attorneys—Brucker & Farber and A. B. Mabee, for Company; Hutson & Hutchinson, for Spohn; all of Mansfield.

---

## No. 225

### KINNEAR-RUSSEL P. & H. CO. v. ROGERS, Rec., et

No. 19591. Supreme Court

On motion to certify. Dock. Jan 22, 1926.

**719. LIENS**—Is a mechanic's lien vitiated and invalid when the affidavit describes more land that was comprehended by the contract?

The Kinnear and Russell Plumbing and Heating Co. brought this action against George W. Rogers, Receiver of The Portage Construction

and Finance Co.; The Zindle Plumbing & Heating Co., and many others, in an attempt to validate a certain property owned by the Portage Construction and Finance Co.

It appears that a single affidavit was filed for mechanic's lien on three adjoining parcels of land conveyed to the owner by a single warranty deed, The Kinnear and Russell Co. having in fact three separate contracts for the installation of certain plumbing and heating apparatus in three distinct buildings thereon.

The Summit Common Pleas held that no lien right was secured as to any of said buildings and this judgment was affirmed by the Court of Appeals.

The question is also raised as to the effect of the ultra vires acts of the Cleveland Discount Co. in discounting notes secured by mortgages and of an Ohio corporation whose authorized capital stock is $50,000, borrowing $900,000.

The Plumbing and Heating Co., in the Supreme Court, contends that the entire development was operated as an entire plan fairly within the provisions of 8316 of the G. C., and that it has taken all necessary steps to be entitled to a valid lien as to at least one of the buildings, at its election.

Attorneys—Wilkin, Cross & Daoust, Cleveland, for Heating Co.; G. H. Doolittle, Fairoll & Fairoll, and Burch, Bacon & Denlinger, Akron, for defendants.

---

## No. 226

### BUCHANAN v. TWINEM, et

### No. 19587. Supreme Court

On motion to certify. Dock. Jan. 21, 1926; 4 Abs. 72.

889. PARTITION—Are oil royalties apartable in a partition suit brought by one of the tenants in common of land from which the oil is taken?

Charles S. Buchanan Jr. brought this action originally in the Monroe Common Pleas against Charles A. Twinem, et al, all of whom are tenants in common of certain property upon which oil rights have been leased. Charles S. Buchanan seeks a partition of royalties derived from oil taken from said property.

It seems that the plaintiff and defendants are tenants in common of property which passed under the will of C. S. Buchanan Sr., deceased. Oil rights had been leased in consideration of a ⅛ royalty to be paid to the owner of the property for all oil taken from said property. The Common Pleas refused partition and this judgment was affirmed by the Court of Appeals.

Charles S. Buchanan, in the Supreme Court contends that he and the defendants own the royalty in common, in feé simple; that oil is part of the real estate, that it descends to the heirs as real estate and is therefore apartable.

It is further contended that the oil and gas in question is in place and undeveloped and is capable of separate ownership and subject to partition.

Attorneys—Matz & Matz, for Buchanan; W. H. Cook, and Moore, DeVaul & Moore, for Twinem et; all of Woodsfield.

---

## No. 227

### EDMONDS, et v. MURPHY, Extrx et

### No. 19582. Supreme Court

On motion to certify. Dock. Jan. 18, 1926; 4 Abs. 72.

1271. WILLS—In an action to contest the validity of a will, which by its terms makes the executrix sole devisee and legatee, are the court costs chargeable to the estate, in the event the will is set aside as invalid?

In a will executed by one John J. Murphy, deceased, Mabel Dunn was named sole legatee and devisee and executrix and immediately after the execution of the will the testator and Mabel Dunn were married. By the will, the children of Murphy by a former marriage, his sole heirs at law, were disinherited. The will was probated and Mabel Dunn Murphy was appointed executrix. The children of the testator, Mary Murphy Edmonds and Julia R. Baughman commenced an action in the Allen Common Pleas against Mabel Dunn Murphy as an individual and as executrix to set aside the will. The jury in the first trial disagreed and the jury in the second trial rendered a verdict setting aside the will. The Appeals Court set aside the verdict and on the next trial the will was again set aside and this time the appeals affirmed the verdict but modified the judgment of the Common Pleas by taxing the costs against Mabel Dunn Murphy as executrix instead of individually.

The heirs in the Supreme Court contend that the costs should be taxed against Murphy as an individual and not as executrix on the theory that she, as executrix, was not interested in the outcome of the contest and had no right to conduct an active defense of the will, but as an individual she was vitally interested in the outcome of the action, since she was sole devisee and legatee.

Attorneys—Klinger & Klinger for Edmonds et; MacKenzie, Weadock, Mackenzie & Landis for Murphy et; all of Lima.

---

## No. 228

### CLEVELAND LAUN. CO. v. FARKAS

### No. 19585. Supreme Court

On motion to certify. Dock. Jan. 20, 1926; 4 Abs. 72.

941. PRACTICE & PROCEDURE—May counsel, in the plea to the jury, read statements of facts and state the decision in cases which were decided in accordance with their contention?

Rudolph Farkas brought this action originally in the Cuyahoga Common Pleas against the Cleveland Laundry Co. for damages arising from a collision between a truck in which Farkas was riding and a truck driven by an employee of the Company. It seems that Farkas, at the time of the accident was sitting on the floor of the truck with his feet on the running board and that he was injured by the collision of the two trucks.

Pursuant to the Company's request the court charged the jury on the law of contributory negligence and immediately thereafter counsel proceeded with argument to the jury. The following is alleged in substance:: Counsel for Farkas, over the Company's objection, read ostensibly to the court, but within the hearing of the jury, from memoranda, containing recitals of facts alleged to be similar to the case

at bar from decisions of other courts where the plaintiff recovered even though he had been in a similarly dangerous position, without any justification therefor and for the purpose of destroying the effect of the charge to the jury on contributory negligence.

The Common Pleas overruled the objection and was affirmed by the Court of Appeals.

The Company, on motion to certify, contends:

1. The special charge to the jury on contributory negligence was of no effect because of the reading of the memoranda, which, it is alleged, was highly prejudicial.

2. That reading of mere statements of facts is to be distinguished from the case where counsel reads law to the jury or to the court within the hearing and presence of the jury.

**Attorneys**—C. M. Horn and Dustin, McKeehan, Merrick, Arter & Stewart, for Company; Payer, Winch, Minshall & Karch, for Farkas; all of Cleveland.

---

No. 229

McCARTY v. STATE ex

No. 19583. Supreme Court

On motion to certify. Dock. Jan. 19, 1926; 4 Abs. 72.

**333. CRIMINAL PROCEDURE**—May a Common Pleas Court amend a transcript filed therein by the Municipal Court in a criminal proceeding?

Rose Friedel filed an affidavit in the Toledo Municipal Court in which she charged that Edmond J. McCarty was the father of her unborn, illegitimate child. Pursuant to the issuance of a warrant McCarty was arrested. Later, but before the preliminary hearing, Friedel discovered a material defect in the affidavit and thereupon filed a second affidavit upon which warrant was issued and McCarty's arrest effected.

After filing the second affidavit, Friedel caused it to be dismissed, but intending to dismiss the first affidavit, thereby leaving the first and defective affidavit on file. The judge had none of the pleadings or papers before him at the preliminary hearing, at which time McCarty was bound over to the Lucas Common Pleas. When the case came up for hearing the defective affidavit was discovered and thereupon a demurrer was interposed on the ground that the affidavit did not state facts to show a cause of action. The demurrer was overruled and the clerk of the Municipal Court **was ordered to deliver** the second affidavit, which had been dismissed, which the judge attached to the transcript of the Municipal Court and thereupon the case went to trial over McCarty's objection. The ruling was affirmed by the Court of Appeals.

McCarty, in the Supreme Court contends that the Common Pleas erred in amending the transcript, filed by the clerk of the Municipal Court, by attaching the second affidavit thereto for the reason that he could not even have been tried in the Municipal Court at the time he was compelled to go to trial in the Common Pleas, since the affidavit to which he was compelled to answer was not even pending in the Police **Court.**

It is submitted that McCarty has been deprived of his property and perhaps liberty without due process of law, in violation of his rights under the Federal and Ohio Constitutions.

**Attorneys**—Leroy W. Hunt for McCarty; M. W. Bacome for State ex; both of Toledo.

---

No. 230

AMSTER v. FREEDLANDER et

No. 19550. Supreme Court

On motion to certify. Dock. Jan. 9, 1926; 4 Abs. 56.

**707. LEASES**—If a right in accordance with an indefinite provision in lease is once exercised by the lessee in a certain manner, may a more extensive right be invoked later which would not conflict with such uncertain provision, or is the exercise of the right in the first instance a conclusive interpretation of the intention of the parties concerning the provision granting such privilege?

Nick Amster, the owner of a large business block in Wooster, leased a portion of said block to Herman Freelander and Company for a period of 15 years with an optional period of 5 years additional. A provision of the lease stipulated as follows:

"It is further agreed between said parties that said second party (Lessee) is granted the right during said lease periods to connect said Memorial Block with the property of said second party to the west by bridge over the alley at second party's expense, and to remove said bridge and restore said Memorial Block at his expense at the termination of said lease or leases as it originally was."

The size, location, nature and construction of the bridge are not designated.

A bridge was constructed and used for two years, when Freelander began the construction of a new and separate bridge across the alley, which would by its nature necessarily result in competition in business between the parties which was prohibited by a provision of the lease.

Amster sought a restraining order in the Wayne Common Pleas which was refused and such refusal was affirmed in the Appeals.

Amster contends that:

1. In as much as the lease was silent as to the location, size and construction of the bridge and the lessees having constructed one bridge for one purpose it would be contrary to the lease to construct a new bridge for a different purpose.

2. That the parties, knowing their rights, placed an interpretation upon such privilege by the construction and use of one bridge for a period of time and therefore, Freelander will, as a matter of law, be estopped from asserting and different right or claim.

**Attorneys**—A. D. Metz, Wooster, N. M. Greenburger, and Musser, Kimber & Huffman, Akron, for Amster; Weygandt & Ross, Wooster for Freelander.

(Continued from Page 178)

tation company or violations of requirements for safety of travelling public amounts to neglect and constitutes a menace to passengers.

1192. TRANSPORTATION—Motor transportation companies cannot deviate from regular route in transportating passengers upon special trips in absence of authorization from Commission.

MATTHIAS, J.

1. The Public Utilities Commission is authorized by law to regulate the service and prescribe safety regulations for the operation of motor vehicles by motor transportation companies in this state, and is empowered "for a good cause" to suspend or revoke any certificate of public convenience and necessity issued by it pursuant to Section 614-87, General Code.

2. The omission of trips from its schedule by a motor transportation company by reason of the diversion of busses therefrom to special trips elsewhere, or the violation of requirements prescribed by the Public Utilities Commission for the safety of the traveling public for such protracted period as to evidence neglect and constitute a menace to passengers, warrants the revocation of the certificate of public convenience and necessity theretofore issued to such company.

3. Where a motor transportation company is granted a certificate of public convenience and necessity by the Public Utilities Commission of the state, and thereby granted authority to transport passengers by designated motor vehicles over a regular route therein described, such company, in the absence of a certificate of the commission authorizing it so to do, may not use any such motor vehicle in transportating passengers over an irregular route or upon special trips, though the same be made under private contract.

Order affirmed.

Marshall, CJ., Jones, Day, Allen, Kinkade and Robinson, JJ., concur.